# Exhibit A

**ZEMANTA SUPPLY SIDE PLATFORM AGREEMENT**

| | |
|---|---|
| **Supply Side Partner:** (Address) | PubNative GmbH, Rosenstr. 17, 10178 Berlin Germany |
| **Initial Delivery Date of Exchange:** | 3/1/2016 |
| **Launch Date of Exchange:** | 3/15/2016 |
| **Functional Specifications:** | ▪ Zemanta shall be entitled to participate in SSP's Exchange through bids scheduled by Zemanta. <br><br> ▪ An auction shall be completed in connection with each bid request as follows: <br><br> o The bid, as applicable, shall compete in near real time with other bids submitted to the Exchange through the Services for the deliverable that forms the subject of the bid request. <br><br> o In the event that such bid wins the auction, an advertisement shall be delivered (also in near real time) to the applicable website, all in accordance with the winning bid. <br><br> o The price payable by Zemanta for the deliverable is set forth below. |
| **Payment:** | Zemanta will pay SSP an amount equal to the greater of the second highest bid or, if there is not more than one bid, then the established floor rate. If there is not an established floor rate, then Zemanta shall pay ▮▮▮ |
| | |

| | Primary Contact | Technical Contact (if different) |
|---|---|---|
| Name | | |
| Email | | |
| Phone | | |

The Supply Side Partner ("**SSP**") listed above enters into this Zemanta Supply Side Platform Agreement ("**Agreement**") with Zemanta, Inc. ("**Zemanta**"), a subsidiary of Zemanta Ltd., as set forth in the following pages. By

*Zemanta Supply Side Platform Advertising Agreement*
*Page 1 of 11*

e-signing, the parties through their duly authorized representatives agree to the terms as memorialized in this Agreement.

| ZEMANTA, INC. | SUPPLY SIDE PARTNER |
|---|---|
| By: Andraz Tori | By: Edgardo de Guia |
| Date: 18. February 2016<br>Address: 33 West 17th Street, Suite 903<br>New York, NY 10011 | Date: 18 Feb 2016<br>Address: Rosenstr.17 Berlin, 10178 Germany |
| | Phone: +49 172 891 8654 |
| Phone: +1 415 9371 936<br>Fax:<br>Email: andraz@zemanta.com | Fax:<br>Email: edg@pubnative.net |

THIS SUPPLY SIDE PLATFORM AGREEMENT ("*Agreement*") is entered into as of the date the Agreement is e-signed or accepted by the SSP (the "*Effective Date*"), whose details are set forth on the cover page (the "*Cover Page*") by and between Zemanta Inc. (a subsidiary of Zemanta, Ltd.), a Delaware corporation with its principal offices at 33 West 17th Street, Suite 903, New York, NY 10011 ("*Zemanta*") and SSP.

1.      **SSP's Services.**

1.1      SSP's Services. SSP will provide the following services to Zemanta (collectively the "**Services**"): (a) SSP will customize and implement an online advertising exchange (the "**Exchange**") that performs in accordance with the functional specifications, which Exchange shall allow DSP to purchase impression inventory delivered by the Exchange ("**Deliverables**") in near real time by bidding on the impression inventory; (b) SSP will host the Exchange; (c) SSP will provide maintenance services for the Exchange; and (d) its Services and, as necessary SSP will provide customization and support services, including reasonable education and support, during normal business hours, to Zemanta.

1.2      License Grant.  Subject to the terms of this Agreement, SSP hereby grants Zemanta a non-exclusive, non-transferable right to access and use the Services.  Zemanta agrees that it will not:  (a) resell, license, lease, time-share, distribute or otherwise transfer to any third party its right to access and use the Service, (b) reverse engineer, decompile or dissemble the Service, (c) modify, copy or create derivative works of Service (or any part thereof), or (d) access or use Service for the purpose of building a competitive product or service or copying its features or user interface or authorize or permit a direct competitor to do so.

1.3      SSP's Ownership.  SSP retains all right, title and interest in and to the Services and Exchange, including

all intellectual property rights thereto.

1.4    Acceptance.    The Exchange shall conform to the OpenRTB Native 2.3 (or higher) standard and Functional Specifications (as defined on the Cover Page).  Within ten (10) business days from the time SSP delivers the Exchange to Zemanta, Zemanta will review, test (including in respect of functionality, performance and usability) and either approve or reject the Exchange.  Zemanta will provide all reasons for any rejection, suggesting modifications as appropriate, on an iterative basis, and SSP will correct and re-deliver the Exchange until it is in a form acceptable to Zemanta.  In the event that the Exchange does not meet Zemanta's final reasonable approval at least one (1) day prior to the launch date, either party may (without incurring any liability) terminate this Agreement upon written notice to the other party.

**2.    Zemanta's Client's Advertising Materials**.  SSP acknowledges and agrees that it does not have any rights in or title to any of the intellectual property rights contained in Zemanta's clients' advertising materials, except for the right to display the Zemanta's Clients' advertisements on the websites in accordance with this Agreement and SSP agrees that it will not use the advertising materials for any other purpose.  Further, SSP may not alter the advertising materials in any way.

**3.    Payment.**

3.1    Payment Terms.  Zemanta will pay SSP in accordance with this Agreement and as set forth on the Cover Page.  All payments are in US dollars.  All payments under this Agreement will be in accordance to SSP's measurements. The payable event is a successfully sent win notice that communicates the exact cost incurred by a specific bid that Zemanta has submitted and won. Zemanta will pay SSP within ▮▮▮▮▮▮▮ of the end of each calendar month.  If there is any disagreement with respect to any discrepancies related to the payment to SSP hereunder, the parties agree to work in good faith to resolve the dispute.  If the parties are unable to resolve the dispute within thirty (30) days from the date of notification of the dispute, then Zemanta and SSP agree to submit the dispute to binding arbitration with a single arbitrator and each party shall bear their own attorneys' fees but share the cost of the arbitrator.

3.2    Taxes.  For purposes of this Agreement, ***"Taxes"*** shall mean all federal, state, local, foreign and other net income, gross income, gross receipts, sales, purchase, use, ad valorem, value added, goods and services, harmonized sales, transfer, franchise, profits, withholding, payroll, excise, stamp, real or personal property, customs, duties or other taxes, fees, levies, assessments or charges of any kind whatsoever, including any related penalties and interest, imposed by any federal, territorial, state, local, or foreign government or any agency or political subdivision of any such government. Zemanta is solely responsible for the payment of all Taxes associated with its use of the Services and SSP is solely responsible for the payment of all Taxes associated with any payments made by Zemanta to SSP under the terms of this Agreement.

3.3    Fraudulent Activity.  Each party agrees that it will not, and will not authorize or encourage any third party to, directly or indirectly generate impressions, click-throughs, conversions, and/or other actions with respect to the Services or Exchange through any automated, deceptive, fraudulent, or otherwise invalid means, including through repeated manual clicks, the use of "robots," or other automated tools ("***Fraudulent Activity***").  If Zemanta suspects Fraudulent Activity, then Zemanta shall notify SSP that it suspects Fraudulent Activity and Zemanta, in its sole discretion, may withhold payment to SSP.   Zemanta and SSP agree to work in good faith to resolve any dispute regarding Fraudulent

Activity.  If the parties are unable to resolve the dispute within thirty (30) days from the date of notification of the dispute, then Zemanta and SSP agree to submit the dispute to binding arbitration with a single arbitrator and each party shall bear their own attorneys' fees but share the cost of the arbitrator.

3.4    Prohibited Placements.  SSP shall not place ads from Zemanta in any context that would not conform to Federal Trade Commission industry guidelines for native advertising.

## 4.    **Term/Termination**.

4.1    Term.  The term of this Agreement shall begin on the Effective Date and continue for one (1) year or as specified on the Cover Page, unless terminated earlier.

4.2    Termination.  Either party may terminate this Agreement for convenience at any time by providing thirty (30) calendar days' prior written notice.  In addition, either Party may terminate this Agreement if the other party breaches this Agreement; provided that (a) the non-breaching Party provides the breaching Party written notice of such breach and (b) the breaching party fails to cures such breach within thirty (30) days of such notice.  Zemanta may terminate this Agreement at any time for any reason by providing SSP with fifteen (15) calendar days written notice to SSP.

4.3    Effect of Termination.  Upon termination of this Agreement, Zemanta's access to the Services shall cease and SSP shall not be under any further obligation to provide the Services under the terms of this Agreement.  Zemanta shall pay SSP any fees owed to SSP within sixty (60) days from the date of termination.   Sections 1, 3, 4.3 and 7-10 shall survive the termination of this Agreement.  Within thirty (30) days of any termination or expiration of this Agreement, each party will return to the other party or destroy all Confidential Information of the other party.

## 5.    **Data Use.**

Zemanta and SSP will each own the interaction data that it collects from the Services and the Exchange.   SSP may not use or disclose any of the interaction data gathered by or on behalf of Zemanta except that SSP shall have the right to use the Zemanta Data for the sole purpose of providing the Services.

## 6.    **SSP's Representations and Warranties.**

6.1    SSP represents and warrants that:

1.    SSP is an entity duly organized, validly existing and in good standing under the laws of its state of domicile (as listed on the Cover Page);

2.    SSP (i) has the full right and authority to enter into and perform this Agreement; (ii) the execution, consent or acknowledgment of no other party is necessary in order to validate SSP's entry into and performance of this Agreement; (iii) SSP's entry into and performance of this Agreement does not violate any agreement binding on SSP; and (iv) this Agreement is a legal, valid, binding and enforceable obligation of SSP;

3.    Nothing in the Services or Exchange infringes any intellectual property (copyright, author's rights, trademark, etc.), personal right (right of privacy, right of publicity, defamation, etc.) or other proprietary right of any person nor do the Services or Exchange violate any local, state or federal law of the United States or any applicable international jurisdiction;

4.    SSP will use commercially reasonable efforts to provide the Services according to the terms of this Agreement; and

5.    SSP has all necessary rights and permissions to grant licenses in the Services to Zemanta.

6.2    Zemanta represents and warrants that:

1.    Zemanta is an entity duly organized, validly existing and in good standing under the laws of the state of Delaware;

2.    the advertising materials provided by Zemanta's customers will not infringe the intellectual property or other proprietary rights of any third party.

6.3    No party to this Agreement has made any representations or warranties to the other except as expressly set forth in this Agreement.

**7.    SSP's Warranty Disclaimer**.    SSP DOES NOT WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE OR MEET ZEMANTA'S REQUIREMENTS.  THE SERVICE IS PROVIDED "AS IS".

**8.    Limitation of Liability**.    EXCEPT FOR A PARTY'S INDEMNIFICATION OBLIGATIONS OR CONFIDENTIALITY OBLIGATIONS, NEITHER PARTY SHALL BE RESPONSIBLE OR LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR TERMS AND CONDITIONS RELATED THERETO UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY: (A) FOR ERROR OR INTERRUPTION OF USE OR FOR LOSS OR INACCURACY OR CORRUPTION OF DATA OR COST OF PROCUREMENT OF SUBSTITUTE GOODS, SERVICES OR TECHNOLOGY OR LOSS OF BUSINESS OR PROFITS; (B) FOR ANY INDIRECT, EXEMPLARY, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES; (C) FOR ANY MATTER BEYOND A PARTY'S REASONABLE CONTROL; OR (D) FOR ANY AMOUNTS THAT, TOGETHER WITH AMOUNTS ASSOCIATED WITH ALL OTHER CLAIMS, EXCEED THE FEES ACTUALLY RECEIVED BY SSP FOR THE APPLICABLE SERVICE UNDER THIS AGREEMENT OR RELATING TO ANY SUBJECT MATTER OF THIS AGREEMENT IN THE TWELVE (12) MONTHS PRIOR TO THE ACT THAT GAVE RISE TO THE LIABILITY, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF ANY OF THE FOREGOING TYPES OF LOSSES OR DAMAGES.

**9.    Indemnification**.

9.1    SSP hereby agrees to defend, indemnify and hold harmless Zemanta, its advertising clients, and their respective officers, directors, agents and employees from any and all liabilities, losses, expenses, damages, and costs

(including, without limitation, reasonable attorneys' fees) that may at any time be incurred by any of them by reason of any third party claims, actions, suits or proceedings relating to or arising out of: (i) any breach (or, as to defense obligations only, alleged breach) by SSP of any term, condition, representation or warranty under this Agreement; (ii) the websites used by SSP in providing the Services and the Exchange; (iii) Zemanta's use of the Services or Exchange; (iv) the infringement of the Exchange or the Services, or on the intellectual property right of a third party.

9.2     Zemanta hereby agrees to defend, indemnify and hold harmless SSP and its officers, directors, agents and employees from any and all liabilities, losses, expenses, damages, and costs (including, without limitation, reasonable attorneys' fees) that may at any time be incurred by any of them by reason of any third party claims, actions, suits or proceedings relating to or arising out of Zemanta's gross negligence, willful misconduct or fraudulent actions.

9.3     Any claim for indemnification hereunder shall be subject to the following provisions: (i) the indemnifying party shall be given prompt written notice of the claim by the indemnified party, provided that any delay in providing notice shall not relieve the indemnifying party of its indemnity obligations under this Agreement unless, and only to the extent, the indemnifying party was prejudiced by the delay; (ii) the indemnifying party shall have the right to control the defense and all negotiations relative to the settlement of any such claim, provided that it diligently undertakes such defense and that no settlement admitting liability on the part of the indemnified party or limiting the indemnified party's rights hereunder may be made without the express written consent of the indemnified party; and (iii) the indemnified party shall reasonably cooperate with the indemnifying party and its counsel at the indemnifying party's cost and expense.

## 10.     <u>Maintenance and Upgrades</u>.

10.1     <u>Updates</u>, <u>Upgrades</u>. SSP shall provide Zemanta, without any further charge to Zemanta, all updates (comprising general bug fixes and minor enhancements) and upgrades (comprising enhancements and major functionality changes) for the Services or Exchange reflecting improvements made to the underlying technology upon the implementation of such updates and upgrades to the Services or Exchange.

10.2     <u>Maintenance</u>.  SSP may occasionally be required to suspend the Services or Exchange in order to provide maintenance services.  SSP shall provide Zemanta with no less than ten (10) business days advanced written notice of any such suspension.

## 11.     <u>General Provisions.</u>

11.1     <u>Further</u> <u>Assurances</u>.  Zemanta and SSP shall each promptly sign and deliver any and all additional documents and perform any and all acts reasonably necessary to perform its obligations and carry out the intent expressed in this Agreement.

11.2     <u>Confidentiality</u>. Both parties agree that they will hold in strictest confidence and will not use or disclose to any third party, any confidential information disclosed by the other party.  For purposes of this Agreement, "confidential information" shall mean all non-public information that a party designates as being confidential, or which, under the circumstances of disclosure ought to be treated as confidential.  "Confidential Information" includes, without limitation, the terms and conditions of this Agreement, information relating to released or unreleased Zemanta technology (software and hardware products), marketing or promotion materials related to Zemanta's technology, products or services or customers or suppliers of Zemanta and SSP's Services.  "Confidential Information" shall not include information that

was known to either party prior to the disclosure by the other party, information that becomes publicly available through no fault of any party or information that was independently developed by either party.

11.3     Notices.  All notices, requests, demands and other communication given or required to be given hereunder shall be in writing and personally delivered, sent by United States registered or certified mail, or internationally-recognized courier service such as Federal Express, duly addressed to the parties as set forth on the Cover Page.   Delivery of any notice shall be deemed made on the date of its actual delivery if personally delivered, and on the date indicated in the return receipt or courier's records as the date of its delivery or first attempt at delivery if sent by mail or courier.  Any party may change its address or telecopy number for notice purposes by giving notice to the other party.

11.4     Interpretation.  Each party (and its counsel if such party so elected) has reviewed and revised this Agreement and any rule of contract interpretation to the effect that ambiguities or uncertainties are to be interpreted against the drafting party or the party who caused it to exist shall not be employed in the interpretation of this Agreement or any document executed in connection herewith.

11.5     Severability.  If any provision of this Agreement or its application to any party or circumstance is held invalid or unenforceable, then the remainder of this Agreement and the affected provision to the extent it is not held shall remain valid and enforceable and in full force and effect.

11.6     No Partnership.  This Agreement shall not be construed as creating a partnership or joint venture between Zemanta or SSP or between either of them and any third party or cause either of them to be responsible in any manner for the other's or any third party's debts or obligations, including to any employees.

11.7     No Waiver.  A waiver by either party of a default by the other party or of any right hereunder shall be effective only if it is in a writing signed by the waiving party and shall not be construed as a waiver of any other default or right, whether similar or dissimilar.

11.8     Transfer.  Neither party may sell, assign, or otherwise transfer, or attempt to sell, assign or otherwise transfer, all or any portion of its rights or obligations under or otherwise in connection with this Agreement without the prior written consent of the other; provided, however, the foregoing prohibition shall not apply to any sale of all or substantially all of one party's assets or any merger or reorganization to which consent of the other Party is not required.

11.9     Counterparts.  This Agreement may be executed in counterparts, all of which shall constitute one instrument.  Facsimile copies of this Agreement are acceptable as original copies.

11.10    Governing Law and Jurisdiction. This Agreement will be governed by and construed under applicable federal law and the laws of the State of New York, excluding any conflict of law provisions.  Zemanta and SSP irrevocably consent to the exclusive jurisdiction of any New York state or federal court sitting in the Southern District of New York, over any suit, action or proceeding arising out of or relating to this Agreement.

11.11    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of Zemanta and SSP and their permitted successors and assigns.

11.12    <u>Survival</u>.  Rights and obligations under this Agreement, which by their nature should survive, will remain in effect after the termination or expiration of this Agreement.

11.13    <u>Entire</u> <u>Agreement;</u> <u>Amendments</u>.  This Agreement contains all of the agreements of the parties hereto with respect to the matters contained herein and all prior or contemporaneous agreements or understandings, oral or written, pertaining to any such matters are merged herein and shall not be effective for any purpose.  No provision of this Agreement may be amended or added to except by an agreement in writing, which is signed by the parties hereto or their respective permitted successors-in-interest and indicates that it is an amendment of this Agreement.

IN WITNESS WHEREOF, Zemanta and Partner have executed this Agreement as of the Effective Date.

## SCHEDULE A

**Zemanta's Terms of Service**

http://www.zemanta.com/legal/terms-of-service/

**SCHEDULE B**

**Customizations**

## SCHEDULE C

**Placement/Creative**